Argument not to exceed 15 minutes per side. Mr. Torres, you may proceed for the appellate. Good morning, Your Honors. May it please the Court, I reserve four minutes for rebuttal. Your Honors, I have the privilege of representing Billy Arnold, the appellant in this case. Because of the convictions in this case, he will spend the rest of his life behind bars, so the stakes simply could not be higher, unless the Court reverses the errors that we point out here. The government wishes to say we have a mountain of evidence, and that we needn't even worry about the issues that are raised in the opening brief on behalf of Mr. Arnold. I beg to disagree. Government forgets that there was already one trial in this case. Out of 23 counts, they were successful in getting one count of conviction, a 922G possession charge. On the retrial, I'll acknowledge, they convict him on all counts. But that mountain of evidence is something we should have come to expect. After all, the trial was five weeks long. The government's own exhibit list, 30 pages, just their exhibits. And on top of that, there were 22 counts at play, many witnesses, hours of testimony, thousands, literally, of pages of transcript. We should expect a mountain of evidence, but when we start taking a look at it, we find out that there were crucial errors that need to be addressed. Let me begin with a couple of them to highlight the severity of the problems here. First, let's talk about the rap videos and the rap lyrics. I've been in this whole case about the colorful videos of rap music, which honestly, if you take a look at them, it's braggadocio. Braggadocio at its worst, because it's just hyped up... As I understand it, the one key video was the EYE video, which tied directly to one of the victims who was shot in the eye. Correct. Although, maybe you could argue the question of the problem of lots of rap videos, to the extent there were lots, that specific one sounds like it is directly related to charges in this case. Again, I beg to differ. Fair enough. The government thought so, certainly the defendant didn't. Take a look at it. It's a group of individuals trying to be rap artists, probably high. They're drinking some clear fluid, I suspect it's something like vodka. It's tied to, like I said, braggadocio at its worst. And at its best, it's just pure bragging as to spending time probably against, again, drunk or high. And yes, they do mention rapping rhymes with eye. To the extent that's attenuated to this crime that my client was convicted of, fair, but the tie is extremely tenuous. And for us to even fight this issue is, to me, very peculiar. The government will say, hey, you never raised this issue. That's absolutely wrong. In 2017, Mr. Arnold joined a motion that was raised by one of his co-defendants, Quincy Graham. That motion attacked specifically videos that involve rap and rap lyrics. This video was included. The district court admittedly denied the motion, but noted the following. The court, this is a quote, the court may exclude as cumulative or redundant rap evidence that goes to effect that has been firmly established by the government. Your Honors, I might suggest to the court that that needs to be reexamined here. 403 of the rules of evidence set forth three standards. It's a balancing. Nothing of that was ever done by the district court here. Nothing at all. So I know you were not the counsel at trial. Did counsel at trial raise these points? Your Honor, yes, he did. And they were preserved through his attaching, joining the motion of Mr. Graham. I might add as well that this issue did come before this panel. And Judge Boggs, I mean no disrespect when I challenge your panel decision of which you were a part. And Judge Batchelder, you too have seen this case before in United States v. Fisher. A case that's less related to the issues relating here, but there's still, the provenance is the trial from Detroit, Michigan. Bailey said this about the videos. Well, we're bringing them in because it's evidence, quote, especially helpful for establishing the existence of an enterprise here because the government lacked evidence of a formal structure. Here's what the district court, though, said when the trial of Mr. Arnold was taking place. Quote, and this is the beginning of the instructions at the beginning of the trial, before testimony was taken. He instructs the jury, quote, it is not necessary that the enterprise have any particular or formal structure. The instruction he gives at the end repeats the very same words. It is not necessary that the enterprise have any particular or formal structure. In other words, the reason that was given in Bailey to allow this video and these rap lyrics to come in was dispensed of by the district court himself. Let's take another example. There's an issue of a statement from one co-defendant, a gentleman by the name of Michael Rogers, to another cooperating witness and co-defendant, Derek Kennedy. The statement is important. Mr. Rogers tells Mr. Kennedy, word on the street is that Billy Arnold killed Duann Page. So it's a very important statement for the purpose of this case. We're not denying and we're not even challenging the rules of evidence on this point. We know that Rule 801 D2E allows co-conspirator statements to come in. It defines them as not even being hearsay, even though they are. But the rule requires preponderance of evidence on three specific findings. One, there was a conspiracy. Two, the statement was made while the parties that are alleged here in part of it were participating. And when the statement was made, they were part of that conspiracy. And three, that the statement has to be in furtherance of the conspiracy. It's that statement, that last prong, furtherance of the conspiracy, that the Bailey Court, United States v. Bailey in 2022, said we're going to allow this statement to come in. Even that panel, though, said this is, quote, a close call. I might add to that analysis further language from that opinion and other courts of this circuit. Quote, if it's not in furtherance of the conspiracy, the statement is mere idle chatter or casual conversation about past events. I urge you to look at the statement. It is precisely that, idle chatter and past events recounted by Mr. Rogers to Mr. Kennedy. Let's take another example. The key witness for the government, unquestionably, was Special Agent Vince Ruiz. He testified five separate times during the trial. There are three significant problems with his testimony. First, randomly pick a page of the hundreds, thousands of pages that Mr. Ruiz, or Special Agent Ruiz testifies. You'll find that he's invading the province of the jury.  The assistant U.S. attorney asks him, e-mails, text messages, videos, social media pages, tell us what it shows. Tell us what that picture says. Tell us what that caption reads. Tell us what that text message says.  The jurors can read nothing was in any language other than English. They could make their own choice. In United States v. Freeman in 2013, this court specifically said, quote, we do not want the jury to spoon feed, be spoon fed by the testimony. That's precisely what went on. You don't even need... Yes, Your Honor, and I might, I was not at the trial, you're correct, but I might even add the following. When you read the transcript, imagine if someone had not just said, I'll hold this as a standing objection, and objected along the way. There are literally hundreds of examples where the assistant U.S. attorney puts up on the screen a text message and says, tell us what it says. Why? I might also add 403. So if there were many examples of this, you could imagine that some of them would be... It's not important that the agent says that I was there means I was there. I mean, anybody knows that, so the jury can read that. But if it's using language that the jury might not know, then the agent might have some ability after having read all of these texts to say, well, I know that when they talk about ABC, they really mean kill or something like that. No question about that, Your Honor. Those are permissible. That's different from the ones we're complaining about. Your Honor, I'll continue my argument and reply. I see my time is up. May it please the Court. My name is Jessica Curry, and I represent the United States. Arnold's convictions, including for RICO conspiracy and multiple murders, should be affirmed. With my limited time, I'd like to suggest the most straightforward way to resolve this appeal. The Fourth Amendment issue that Arnold has raised is partially abandoned and can otherwise be resolved on good faith. There's also a handful of evidentiary claims. Many of them were addressed in the Bailey decision, the appeal by Arnold's co-defendant. There is no reason why the analysis there should not be applied here and even be dispositive in this case. Tell me if I'm missing something, but Bailey was a co-defendant, is that correct? Was that a published decision? Bailey is not a published decision, but a co-defendant case, when it goes on appeal, would be the law of the country. Binding in a different respect than a precedential opinion. What one panel does on an unpublished opinion involving a different co-defendant is considered to be law of the case for this panel? Yes, as applied to other co-defendants in the same case. Is there a case you would cite for that principle? I don't have it handy and it wasn't part of our briefing. At a minimum, this would be persuasive and I think departing from Bailey, there would need to be a reason to do so. There just is not a reason to do so here. Just picking up where the points that the defendants focused in on, the rap lyrics. First is the matter of preservation. The motion in limine that Arnold joined, at issue were 11 specified rap videos. Those were the only rap videos that the district court ruled on. Yes, Arnold joined in that, but now he is adding different rap videos. Those matters were never before the district court. Correct, it's not listed. It's factually incorrect. The videos at issue in the motion in limine were professional videos that are posted on YouTube. The EYE video is video from a cell phone and it's in a kitchen setting. Arnold is actually filming it and when the individual in the video says the EYE line, Arnold chimes in and says, that's real rap right there. These are describing real events perpetrated by members of the Seven Mile Bloods in furtherance of this criminal enterprise. They were highly probative. One of the other videos that was not at issue in the motion in limine, actually it's not a video, it's a recording of a jail call in which Arnold is freestyle rapping. Again, that is not preserved. Even if it were preserved, this was not an abuse of discretion. These lyrics are about dealing drugs, about staying loyal, and about exacting revenge against rivals. When rap lyrics are probative... For what purpose were they introduced? These were introduced as evidence, both of the specific acts of violence at issue in the case, but also the enterprise, that these individuals were affiliated for a common purpose. It shows them all in the same type of clothing. They are flashing gang signs, again showing their shared loyalty and unity as a gang. There are even, in one of the videos, the Welcome to Hab City video, there is real news coverage of the guilty verdict against a fellow gang member in a murder case. Also depicts areas of the neighborhood, the red zone, some of the streets that are at issue, and this case. Establishing territory, common purpose of drug dealing, there's a lot of depictions of the money and the guns altogether that are probative of this affiliation for a common purpose. The district judge, when considering the 11, I assume, did a balancing under 403? Correct, the court did a balancing under 403, and then another panel of this court in the Bailey decision did a balancing as well, and although it felt it to be a closer call, it did uphold the admission of that evidence. I'll also touch on the agent testimony. As for Agent Ruiz testifying about the inner workings of the gang, that claim of error was not preserved. So there was one objection made about a point in the testimony where Agent Ruiz began to testify about something that the defense thought was encroaching on expert testimony. It was an objection, and the prosecutor then reframed the question and even specified to Agent Ruiz, I'm not asking for your opinion, I would just like you to tell me the facts, and that's exactly what happened there. Your opponent is arguing that Ruiz was constantly explaining texts that would not need any explanation as to what they meant. How do you respond to that? Well, some of them were not intuitive. There was some cryptic language that he was deciphering. Millie was a reference to a gun, for example, and this court has permitted agents to testify about their own perceptions as an investigator. That would be lay opinion testimony about the meaning of communications. This was no more than that. For example, in the Edwards case, there was a DEA agent. He was permitted to interpret words that were unique to healthcare fraud investigations. The use of the term marketer, he explained, was a patient recruiter. Agent Ruiz did not cross the line into expert testimony because he never offered an opinion on an ultimate issue. But isn't he arguably endorsing the prosecution's viewpoint by saying, well, this text, which is using regular language, so you don't need to say what Millie means, that's what this text is saying. So he's sort of reiterating what the texts were doing and giving the imprimatur of a federal special agent or whatever his employer was. So this court has said that suggesting to the jury that the agent has some information that isn't before the jury is where that runs into a problem. These text messages were available to the jury. There were many, many jail calls introduced here. So this was not a case where the agent was suggesting to the jury, trust me, I've looked at more than you have. All of the underlying evidence was made available to the jury, and he stayed away from a finding on ultimate issues about enterprise, common purpose, and left that for the trier of fact. Unless this court has specific questions, I'll rest on my briefs. Thank you. Your Honor, as with my four minutes, let me continue briefly if I might, the points I was making when my time expired, and then I'll go to responding to my opponent. But you need to just rebut what has been said. As opposed to bringing anything new in. On the point of the video, if you look at the motion, it says videos and rap lyrics. The district judge's opinion unquestionably talked about rap lyrics. That's why he put the caution in there, that at some point this needs to be perhaps reexamined during trial. It's all we're dealing with, the same universe of the material. Therefore, to say this video comes in, it's professionally made, that's not true. It's just put up on YouTube as anyone else can. But the point is, it was rap lyrics that are the problem. The second point, just the notion that Special Agent Ruiz comes in here and says, this is my opinion, leads to a problem. My opponent says, quote, no more than that, it was just his opinion. I urge the court to look at the record. That, quote, lay opinion was reading a text message that was in English. We're not contesting that there might have been words that were not necessarily recognizable by someone who could speak English. They are few and far between. When the person puts up a picture and says, what's the caption? And the caption says, this is a picture of Billy Arnold and so-and-so. There's nothing mysterious about that, and there's no reason for lay opinion. I might add, that's the other problem with Agent Ruiz's testimony. He mixes expert testimony with a lay opinion testimony. Never was there a gateway keeper exercised by the district court on his expertise. And there was expertise, not only in the inner workings of a gang, but how you extract cell phone data. How you read cell phone records. How the data, the mountains of data, that deal with all these calls that my opponent just mentioned, can be related back to certain cell phones and IDs. That requires expertise. We agree. There surely should have been a moment where he was qualified to see if he's an expert in this area. After all, he only joined the FBI and the gang task force three years before the case. My point is... How did the district judge deal with that? Relating the cell phone data, was there a contemporaneous objection? What did the district judge say, and then what is in the brief? I understand you didn't write the brief. There was an objection at the very beginning of this case by the defense counsel who said, we have a problem between laying opinion and expert opinion. It's mixed up. The district judge says right at the beginning of the trial, we'll get to that. Then the counsel has to object, right? And he does, Your Honor, throughout. At one point he says, they've got a problem with the opinions that's coming in. We don't need this. This is the jury's providence. So yes, he did object throughout. It was not every point, Your Honor, because honestly, if it were, the littered record would look like something shot up by a machine gun. Because there were so many instances of getting Special Agent Ruiz's opinion in there. By the way, this court itself has said 703A, 7.03A, the jury instruction, for when a law enforcement officer gives both lay and expert opinion. An opinion testimony requires a cautionary instruction at least. It cites a case where there was plein air review. Skip the standard. Plein air was sufficient to reject and reverse the convictions. And finally, United States v. Glenn, which was an opinion from July 20, 2025, just last summer. It followed the trial. It followed, Your Honor, Judge Boggs, it followed Bailey by three years. I urge the court to look at Glenn and in the context of Glenn, its earlier ruling in United States v. Freeman from 2013. In both of those cases, they reversed the convictions. In both of those cases, we had a significant testimony by a special agent. And in both of those cases, the court, like here, as I'm arguing this morning, was concerned that the jury's providence was invaded, that the lay opinion expert testimony was improperly mixed, and that the jury was not given sufficient instruction on the same. Thank you, Your Honors. Thank you. Thank you both for your argument. The case will be submitted. And I understand, Mr. Torres, that you're appointed pursuant to the Criminal Justice Act to represent your client. And we thank you for your service to your client and to the justice system. Thank you, Your Honor. It's always a privilege to be here. Thank you so much.